**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**PATRICK LEE HARRINGTON,**
**852 William Harrington Lane**
**Pasadena, Maryland 21122**

**Plaintiff,**

v.

**WSP FLACK + KURTZ, INC.**
**512 Seventh Avenue**
**New York, NY 10018**
**SERVE:**
**Corporation Service Company**
**Registered Agent**
**1090 Vermont Avenue, NW**
**Washington, DC 20005**

**and**

**WSP USA Corp.**
**512 Seventh Avenue**
**New York, NY 10018**
**SERVE:**
**Corporation Service Company**
**Registered Agent**
**1090 Vermont Avenue, NW**
**Washington, DC 20005**

**Defendants.**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW Plaintiff Patrick Harrington, and for his Complaint against Defendants WSP Flack + Kurtz, Inc. and WSP USA Corp. states as follows:

**Case Summary**

This is a products liability and negligence action based on the unreasonably dangerous manufacture, distribution, installation, and maintenance of an ozone generation system at the National Zoo's new elephant exhibit beginning in 2008-2009. Defendants, individually and/or jointly, installed, maintained, repaired and/or contracted to have built and installed components of the ozone generation system that was used to clean the water in the elephant pool. The ozone generation system was supposed to be installed with safety equipment designed to protect individuals from being exposed to excess ozone gas when they were working around the equipment. This safety equipment included: an ozone destruct unit to filter and destroy excess ozone particles; an ambient ozone monitor to set off an alarm if the concentration of ozone in the air exceeded safe limits; a safety cut-off for the ozone generator should the alarm limits be reached; and an emergency ventilation system that would turn on when elevated ozone levels were detected. The ozone destruct unit was designed and/or manufactured with improper Teflon tubing, instead of mandated stainless steel, and the tubing cracked, causing the device to fail. Further, the safety monitoring unit was not functional, so the elevated ozone levels were not detected when the destruct unit failed. As a result, the generator continued to pump ozone into the room at levels as high as 8 times the safe limit. Finally, the emergency ventilation system was not even connected to the system. Plaintiff was a zoo employee who was repeatedly overexposed to ozone while working around the unreasonably dangerous ozone system. Plaintiff developed a serious and permanent respiratory condition as a result of this overexposure, which has resulted in serious and irreversible damage to his health, employment, events of daily living, and family life.

**Jurisdiction and Venue**

1. Jurisdiction in this matter is founded on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332(a)(1).

2. The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

3. Venue in this action properly lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

4. Plaintiff Patrick Harrington has previously brought suit in the Superior Court for the District of Columbia against three Defendants in connection with this incident: Del Industries, Inc. ("Del"); William V. Walsh Construction Co., Inc. ("Walsh Construction"); and, Specialty Pool & Fountain, Inc. ("Specialty Pool"). That suit, Case No. 2012 CA 005581, is continuing. Defendant WSP Flack + Kurtz, Inc. herein is a third-party Defendant in the Superior Court action.

**Parties**

5. Plaintiff Patrick Harrington is deemed a citizen of the State of Maryland for diversity purposes. At all relevant times he was an employee of the Smithsonian Institution, employed at the National Zoological Park in Washington, D.C. Starting in August 2009, Mr. Harrington worked as a Utility Systems Repairer Operator ("USRO"). Previously, beginning in December 2007, he had been a maintenance mechanic. As a USRO, Mr. Harrington's duties included assisting in the operation, inspection, preventive maintenance and repair work of the critical utilities systems and associated building automation systems.

6.      Upon information and belief, Defendant WSP Flack + Kurtz, Inc. ("Flack and Kurtz") is a corporation organized and existing under the laws of New York, with a principal place of business at 512 Seventh Avenue, New York, NY 10018.  For diversity purposes Flack and Kurtz is deemed a citizen of the State of New York.  At all relevant times, Defendant Flack and Kurtz was an environmental engineering and consulting firm and was authorized to and did perform projects in the District of Columbia.

7.      Upon information and belief, Defendant WSP USA Corp. ("WSP USA") is a corporation organized and existing under the laws of New York, with a principal place of business at 512 Seventh Avenue, New York, NY 10018.  For diversity purposes WSP USA is deemed a citizen of the State of New York.  At all relevant times, Defendant WSP USA was an environmental engineering and consulting firm and performed projects in the District of Columbia.  However, upon information and belief, WSP USA has not been qualified to do business in the District of Columbia.

8.      In the Superior Court action, WSP Flack + Kurtz, Inc. has asserted that it is now known as "WSP USA Corp."  However, according to the New York Department of State, Division of Corporations, both entities are currently active, separate domestic business corporations, under their respective names.  Moreover, according to DCRA's Corporation Division CorpOnline website, WSP Flack + Kurtz, Inc. is an active New York corporation that registered to do business in the District of Columbia on August 27, 2003. DCRA has no listing for WSP USA Corp. as a corporation that was ever qualified to do business in the District of Columbia.  Thus, out of an abundance of caution, Plaintiff names both entities as Defendants, given the inconsistency between the official state corporate records and the representations made by Defendants in the Superior Court action.

**Facts**

9. Upon information and belief, in 2006 the National Zoo published the requirements for a new project known as Asia Trails Phase II: Elephant Trails (the "Project"). The Project involved building a new elephant habitat at the zoo. This included a large pool for the elephants. The Project called for the use of an ozone generation system to clean the water in the pool. This system was to be housed in a separate room in the Elephant Filtration Building, known as the "Ozone Generation Room."

10. Upon information and belief, the specifications for the Project called for the Life Support Systems ("LSS") to include a slipstream ozone disinfecting system, consisting of an ozone generator, an ozone contact tank, an ozone booster pump, ozone monitoring and safety equipment, and an ozone off-gas destruct unit (the "Ozone System"). All ozone carrying piping was to be made of stainless steel. The Project required the ozone system to provide degassing and destruction of all un-dissolved gases. The specifications also required the ozone generator to be interlocked with two ambient ozone detectors, one located inside the Ozone Generation Room. The ozone detector was required to measure the level of ozone present in the Ozone Generation Room and shut down the ozone generator and initiate a visible and audible alarm when the ozone level exceeded a warning level of 0.1 ppm and a high alarm of 0.3 ppm. The ozone detector was also to be interlocked with an exhaust ventilation system for the ozone room. The Project requirements called for the ozone system to include adequate protection devices to protect the operating personnel.

11. Walsh Construction was chosen as the general contractor for the Project. The Project requirements called for Walsh Construction to be responsible for the supply and installation of all electrical components associated with the installation of the ozone system and the controls associated therewith, including the automatic shut-down procedures and all alarms and signaling. Upon information and belief, Walsh Construction supervised construction of the Ozone Generation Room, including the Ozone System, from 2008 through 2010.

12. The Ozone System was required to have a number of safety features to protect individuals, such as Plaintiff, who were working in the Ozone Generation Room. These safety features included ambient ozone monitors (the "Ozone Monitors") which would sound an alarm should unsafe ozone levels be detected in the air, an emergency exhaust fan that would start if the unsafe ozone levels were detected, and a leak detection safety shutdown circuit that was to be wired into the Building Management System ("BMS").

13. Upon information and belief, Walsh contracted with Defendants to provide commissioning of the LSS system and the integration of the BMS. Commissioning in a new construction project is the process by which an equipment, facility, or plant (which is installed, or is complete or near completion) is tested to verify if it functions according to its design objectives or specifications. The LSS system had to be commissioned before construction and assembly were considered complete and it could be put into daily use.

14. Upon information and belief, Defendants, individually and/or jointly, commissioned the LSS system, which permitted the system to be put into operation, including the Ozone System, prior to it being completed, fully operational, and/or able to operate in a safely. Additionally, at the time of commissioning the LSS was not properly integrated into the BMS.

15. Upon information and belief, the Ozone System was brought online and put into use starting in October 2009. Upon information and belief the ozone generator began leaking ozone into the Ozone Generation Room sometime after it was brought online. Tests conducted in the Ozone Generation Room on September 15, 2010, identified ozone levels of six-hundred ten (610) to eight-hundred (800) parts per billion. The Occupational Safety and Health Administration Permissible Exposure Level for ozone is 100 parts per billion on an eight hour time-weighted average. After testing revealed the increased ozone in the Ozone Generation Room the ozone generator was shut down by the National Zoo on September 15, 2010.

16. Upon inspection, during the September 15, 2010, testing, it was determined that the Ozone Monitors were not operating correctly. It was indicating an ozone concentration of zero when the direct monitoring equipment was showing the elevated levels. Additionally, the Ozone Generation Room's emergency exhaust system was also not operating correctly, in fact it had never been connected. Additionally, the ozone generator was not wired into the leak detection safety shutdown circuit and/or properly integrated into the BMS.

17. Upon information and belief, Defendants failed to properly inspect and/or implement proper commissioning procedures which should have identified these failures before operation of the unit. Additionally, Defendants had a duty to ensure that any incomplete or unsafe elements of the LSS identified during commissioning were safely completed before the system was operational.

18. Plaintiff worked in the Ozone Generation Room on a regular basis and was exposed to ozone inside the room over many weeks, as his duties required him to enter the room frequently. Plaintiff began to get sick, from what seemed to be flu-like symptoms. On July 28, 2010, Plaintiff was inside the Ozone Generation Room for a two hour period working to repair

air conditioning equipment. Plaintiff's flu-like symptoms got worse and on August 6, 2010, he sought medical treatment.

19. As a result of his exposure to ozone, Plaintiff has suffered and will continue to suffer severe and permanent medical injuries. Plaintiff was originally treated for asthma. Subsequently, Plaintiff was diagnosed with a chronic cough secondary to hyper-reactive airway disease. In October 2010, Plaintiff was diagnosed with Reactive Airways Dysfunction Syndrome ("RADS"). RADS is a sudden onset asthma based on exposure of the lungs to an irritant, such as ozone. Plaintiff's RADS was the result of his exposure to ozone in the Ozone Generation Room. After two years RADS is considered a permanent condition. Plaintiff's RADS is now considered permanent.

20. As a result of his injuries from overexposure to ozone, Plaintiff suffers from severe and debilitating health problems, including persistent cough, shortness of breath, fatigue, headaches, vertigo, and problems sleeping. Plaintiff has been required to take, and will in the future be required to take, numerous medications to treat his medical conditions.

21. As a result of his injuries from overexposure to ozone, Plaintiff can no longer engage in the activities of daily living as he did prior to his injuries. His shortness of breath limits him in any activity requiring exertion, such as climbing stairs or walking. He is unable to perform yard work, go camping outdoors, do household chores, or engage in other recreational and social activities in the manner he could prior to his injuries.

22. As a result of his injuries from exposure to ozone, Plaintiff has suffered, and will continue to suffer, severe and permanent bodily and emotional injuries and damages, including physical pain, suffering, emotional distress, inconvenience, loss of the enjoyment of life, medical expenses, loss of earnings and earning capacity, and other damages.

**COUNT I**
**(Negligence)**

21. Plaintiff restates and incorporates by reference herein the allegations of paragraphs 1 through 20 above.

22. At all times material hereto, Defendants owed Plaintiff a duty to exercise reasonable care in the commissioning of the subject Ozone System, including the Ozone Destruct Unit, the Ozone Monitors, the emergency exhaust fan, and the leak detection safety shutdown circuit.

23. Defendants breached their duties to exercise reasonable care and Plaintiff's injuries were caused proximately by Defendants' negligence, including the negligence of their respective officers, agents, employees and servants, in that they negligently performed various acts and/or omissions, including but not limited to, the negligent commissioning of the subject Ozone System, including the Ozone Destruct Unit, the Ozone Monitors, the emergency exhaust fan, and the leak detection safety shutdown circuit.

24. The malfunction of the Ozone System that caused and permitted ozone gas to be present and undetected in the Ozone Generation Room at unsafe levels was proximately caused by Defendants' negligent performance of their duties, including but not limited to the negligent commissioning of the subject Ozone System, including the Ozone Destruct Unit, the Ozone Monitors, the emergency exhaust fan, and the leak detection safety shutdown circuit, even though the Ozone System was not fully functional, properly assembled and/or able to function safely.

25. As a direct and proximate result of the foregoing negligence of Defendants, Plaintiff has suffered, and will continue to suffer, substantial damages, including, *inter alia*,

those set forth more fully above, and in an amount not less than FIVE MILLION DOLLARS ($5,000,000.00), plus costs and such further relief as directed by the Court.

WHEREFORE, Plaintiff Patrick Harrington is entitled to a judgment against Defendants, jointly and severally, (1) for compensatory damages in the amount of $5,000,000.00, which amount shall be proven at trial; (2) for costs and expenses associated with this suit; and (3) for such other and further relief as this Court deems appropriate.

**COUNT II**
**(Negligence *Per Se*)**

26. Plaintiff restates and incorporates by reference herein the allegations of paragraphs 1 through 25 above.

27. At all times material hereto, Defendants undertook to commission the subject Ozone System, including the Ozone Destruct Unit, the Ozone Monitors, the emergency exhaust fan, and the leak detection safety shutdown circuit, which were placed in the Ozone Generation Room.

28. At the time Defendants undertook and did engage in the actions above, the following regulation was in place: 29 C.F.R. § 1910.1000 (2010), which establishes the permissible exposure limit ("PEL") of ozone gas for an individual in the workplace as an 8-hour, time-weighted average value of 0.1 part of ozone per million parts of air. The regulation further requires that administrative or engineering controls must first be identified and implemented whenever feasible to achieve compliance with the PEL. When such controls are not feasible to achieve compliance, personal protective equipment, respirators, or any other protective measures must be used to keep the exposure of employees to ozone gas within the PEL. 29 C.F.R. § 1910.1000(e) (2010).

29. Plaintiff was at all relevant times a member of the class and/or classes intended to be protected by 29 C.F.R. § 1910.1000 (2010).

30. Defendants failed to commission the subject Ozone System so as to prevent the buildup of ozone gas in the Ozone Generation Room at level in excess of the PEL, as established in 29 C.F.R. § 1910.1000 (2010).

31. Further, Defendants failed to identify and implement administrative and/or engineering controls sufficient to achieve compliance with the PEL, as required by 29 C.F.R. § 1910.1000(e) (2010).

32. As a result of Defendants' failures, ozone gas contaminated the Ozone Generation Room at six to eight times the PEL while Plaintiff was working therein.

33. Plaintiff's physical and emotional injuries are a direct result of Defendants' failure to comply with 29 C.F.R. § 1910.1000 (2010). Moreover, the harms Plaintiff suffered directly result from the risks that the statute was designed to protect against.

34. By violating 29 C.F.R. § 1910.1000 (2010), Defendants are liable for all of the damages Plaintiff suffered as a result of those violations.

35. As a direct and proximate result of the foregoing negligence *per se* of Defendants, Plaintiff has suffered, and will continue to suffer, substantial damages, including, *inter alia*, those set forth more fully above, and in an amount not less than FIVE MILLION DOLLARS ($5,000,000.00), plus costs and such further relief as directed by the Court.

WHEREFORE, Plaintiff Patrick Harrington is entitled to a judgment against Defendants, jointly and severally, (1) for compensatory damages in the amount of $5,000,000.00, which amount shall be proven at trial; (2) for costs and expenses associated with this suit; and (3) for such other and further relief as this Court deems appropriate.

**COUNT III**
**(Strict Products Liability for the Ozone System)**

36. Plaintiff restates the allegations of paragraphs 1 through 35 above.

37. From the time the Ozone System was brought online in October 2009 until it was shut off in September 2010, the Ozone System was being operated and used for the purpose and in the manner for which it was designed, manufactured, assembled, tested, serviced, distributed, commissioned and sold, and intended to be used, in a manner foreseeable to Defendants.

38. From the time the Ozone System was brought online in October 2009 until it was shut off in September 2010, the Ozone System, including its accompanying written manuals, procedures, instructions and warnings, was defective and unreasonably dangerous and unsafe by reason of the defective design, manufacture, assembly, inspection, testing, sale, service, repair, commissioning, overhaul and maintenance of the subject Ozone System.

39. Prior to the time the Ozone System was brought online in October 2009, Defendants were required to commission and permit operation of the subject Ozone System, so that individuals, such as Plaintiff, could work safely in the Ozone Generation Room without being exposed to unsafe levels of ozone gas. The subject Ozone System was not adequately installed and/or manufactured to prevent unsafe leakage of ozone gas into the air and was instead commissioned even though the Ozone System was not fully functional, properly assembled and/or able to function safely, thus causing the Ozone System to be unreasonably dangerous and unsafe.

40. The Ozone System was commissioned by Defendants with a defect that made it unreasonably dangerous. The Ozone System was not substantially changed when it was commissioned and put into operation at the Zoo.

41. Defendants further breached their duties by failing to advise, instruct and/or warn foreseeable individuals who would be in contact with the Ozone System, such as Plaintiff, of the fact that the system posed an unreasonably dangerous risk.

42. Defendants were an integral part of the overall producing enterprise that placed the defective Ozone System into the stream of commerce.

43. Defendants have been given actual and/or constructive notice of their breach of warranty.

44. Plaintiff, at all relevant times, relied upon the fact that the Ozone System was safe.

45. Plaintiff's injuries were caused by the aforementioned defective, unreasonably dangerous and unsafe conditions of the subject Ozone System which was commissioned when it was not safe to do so.

46. As a direct and proximate result of the foregoing defective conditions of the subject Ozone System, Defendants caused Plaintiff to suffer, and in the future continue to suffer, substantial damages, including, *inter alia*, those set forth more fully above, and in an amount not less than FIVE MILLION DOLLARS ($5,000,000.00), plus costs and such further relief as directed by the Court.

WHEREFORE, Plaintiff Patrick Harrington is entitled to a judgment against Defendants, jointly and severally, (1) for compensatory damages in the amount of $5,000,000.00, which amount shall be proven at trial; (2) for costs and expenses associated with this suit; and (3) for such other and further relief as this Court deems appropriate.

**COUNT IV**
**(Breach of Express Warranty)**

47. Plaintiff restates the allegations of paragraphs 1 through 46 above.

48. Defendants expressly warranted under D.C. Code Ann. § 28:2-313 (2010), and other similar provisions, via their marketing, advertisements, warranties, sales literature, manuals, and other representations that the products they commissioned, and in particular the components of the Ozone System, were fit for the intended purpose or use for which the products were intended and made available for sale, namely the safety of individuals who were intended to work in the area of the Ozone System.

49. Defendants breached said express warranties and the aforesaid code sections by making false representations that their commissioning meant the Ozone System was properly constructed and safe to operate, when in actuality Defendants permitted the operation of a product that was not free from design and/or manufacturing defects, rendering it unsafe for its intended use(s), as described in detail above. Defendants also failed to warn of such defects and/or problems.

50. Defendants, though not the sellers of the Ozone System, still expressly warranted the Ozone System because of the particular circumstances of this situation, including but not limited to the role commissioning plays in the startup, operation, clearance, and approval of the Ozone System. To wit, but for the commissioning of the Ozone System it would not have been operational when it injured Plaintiff.

51. Defendants were an integral part of the overall producing enterprise that placed the defective Ozone System into the stream of commerce.

52. Defendants have been given actual and/or constructive notice of its breach of warranty.

53. Plaintiff is in the class of persons who are/were reasonably expected to use or be affected by the Ozone System at issue.

54. The resulting ozone gas leak, buildup of ozone gas at unsafe levels inside the Ozone Generation Room, and failure to detect the unsafe ozone, as well as Plaintiff's resulting injuries resulting from exposure to the unsafe levels of ozone, were caused by Defendants' breach of aforementioned warranties.

55. As a proximate cause of said breach of warranties by Defendants, Plaintiff has suffered, and will continue to suffer, substantial damages, including, *inter alia*, those set forth more fully above, and in an amount not less than FIVE MILLION DOLLARS ($5,000,000.00), plus costs and such further relief as directed by the Court.

WHEREFORE, Plaintiff Patrick Harrington is entitled to a judgment against Defendants, jointly and severally, (1) for compensatory damages in the amount of $5,000,000.00, which amount shall be proven at trial; (2) for costs and expenses associated with this suit; and (3) for such other and further relief as this Court deems appropriate.

**COUNT V**
**(Breach of Implied Warranty of Fitness for Particular Purpose)**

56. Plaintiff restates the allegations of paragraphs 1 through 55 above.

57. Defendants had a duty pursuant to the express and implied warranty of fitness for particular purpose under D.C. Code Ann. § 28:2-315 (2010), and other similar provisions.

58. Defendants had reason to know of the particular needs of Plaintiff because it was specifically foreseeable that workers at the National Zoo would rely on the Ozone System and its safety components, to be safe when they were working in the Ozone Generation Room.

59. By reason of such knowledge, there was an implied warranty by Defendants, by reason of such knowledge of the particular needs of Plaintiff, that the components of the Ozone System, including the Ozone Monitor, the emergency exhaust fan, and the leak detection safety shutdown circuit, were fit for the intended purpose or use for which the products were intended

and were made available for sale, namely the safety of individuals who were intended to work in the area of the Ozone System. Defendants had reason to know that Plaintiff was relying upon Defendants' superior knowledge, skill and judgment in commissioning the Ozone System.

60.     Defendants, though a non-merchant, still expressly and impliedly warranted the fitness of the Ozone System because of the particular circumstances of this situation, including but not limited to the role commissioning plays in the startup, operation, clearance, and approval of the Ozone System. To wit, but for the commissioning of the Ozone System it would not have been operational when it injured Plaintiff.

61.     Defendants breached said implied warranty, and the aforesaid code section, in that the subject Ozone System, including the Ozone Monitor, the emergency exhaust fan, and the leak detection safety shutdown circuit, and component parts and accompanying warnings, instructions and manuals, were not fit and safe for the purposes for which they were designed, manufactured, assembled, inspected, tested, sold, serviced, repaired, maintained, intended, used, and commissioned and further were not free from all defects. Defendants also failed to warn of such defects and/or problems.

62.     Defendants have been given actual and/or constructive notice of their breach of warranty.

63.     Defendants were an integral part of the overall producing enterprise that placed the defective Ozone System into the stream of commerce.

64.     Plaintiff is in the class of persons who reasonably expected to use or be affected by the Ozone System at issue.

65.     The resulting ozone gas leak, buildup of ozone gas at unsafe levels inside the Ozone Generation Room, and failure to detect the unsafe ozone, as well as Plaintiff's resulting

injuries resulting from exposure to the unsafe levels of ozone, were caused by Defendants' breach of aforementioned warranties.

66. As a proximate cause of said breach of warranties by Defendants, Plaintiff has suffered, and will continue to suffer, substantial damages, including, *inter alia*, those set forth more fully above, and in an amount not less than FIVE MILLION DOLLARS ($5,000,000.00), plus costs and such further relief as directed by the Court.

WHEREFORE, Plaintiff Patrick Harrington is entitled to a judgment against Defendants, jointly and severally, (1) for compensatory damages in the amount of $5,000,000.00, which amount shall be proven at trial; (2) for costs and expenses associated with this suit; and (3) for such other and further relief as this Court deems appropriate.

**COUNT VI**
**(Common Law Tort of Public Nuisance)**

67. Paragraphs 1 – 66 above are hereby incorporated by reference as if set forth fully herein.

68. Defendants unreasonably interfered with a right common to the general public and thereby caused Plaintiff to suffer damages distinct from that common to the public.

69. Defendants owed the public generally, and Plaintiff specifically, a common law duty to prevent injury arising from abnormal and out of place events and/or events that would not ordinarily have occurred in the exercise of due care in regard to property under its control. Specifically it had a duty not to allow the Ozone System to operate in a fashion that created unsafe levels of ozone gas to be present without any warning.

70. Defendants breached their duties, both directly and through their employees, servants and/or agents, through their acts and omissions in commissioning the subject Ozone System, including the Ozone Monitor, the emergency exhaust fan, and the leak detection safety

shutdown circuit, in a manner that caused and permitted ozone gas to be present and undetected in the Ozone Generation Room at unsafe levels.

71. As evidenced by Defendants' conduct in failing to prevent injury arising from abnormal and out of place events and/or events that would not ordinarily have occurred in the exercise of due care in regard to property under its control, Defendants unreasonably interfered with a public right and caused injury to Plaintiff.

72. As a direct and proximate result of Defendants' and/or Defendants' employees' and/or agents' breach of their duty to Plaintiff's rights and safety, Plaintiff experienced and will continue to experience pain and suffering, physical injuries, and severe emotional distress; has been prevented from pursuing usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, as well as expenses for future medical care.

73. As a further direct and proximate result of the breach of Plaintiff's rights and safety by Defendants and/or Defendants' employees and/or agents, Plaintiff suffered past and future lost income, lost earnings, and loss of earning capacity, as well as other damages discussed herein.

WHEREFORE, Plaintiff Patrick Harrington is entitled to a judgment against Defendants, jointly and severally, (1) for compensatory damages in the amount of $5,000,000.00, which amount shall be proven at trial; (2) for costs and expenses associated with this suit; and (3) for such other and further relief as this Court deems appropriate.

**JURY TRIAL REQUESTED**

Plaintiff, by counsel, respectfully requests a trial by jury on all issues.

**Respectfully submitted,**

**PATRICK HARRINGTON**

By: ______________________

**Peter C. Grenier, D.C. Bar #418570**
**Jacob M. Lebowitz, D.C. Bar #483742**
**Bode & Grenier, LLP**
**1150 Connecticut Avenue, N.W.**
**Ninth Floor**
**Washington, D.C. 20036-4192**
**(202) 828-4100**
**(202) 828-4130 – facsimile**
**pgrenier@bode.com**
**jlebowitz@bode.com**
***Counsel for Plaintiff***

**Of Counsel:**

**Michael J. Belsky, Esquire**
**Megan Oleszewski, Esquire**
**Schlachman, Belsky & Weiner, P.A.**
**300 East Lombard Street, Suite 1100**
**Baltimore, MD 21202**
**Tel: 410-685-2022**
**Fax: 410-783-4771**
**mbelsky@sbwlaw.com**
**moleszewski@sbwlaw.com**
***Counsel for Plaintiff***

**Dated: July 22, 2013**